I'm happy to hear in our first case, 19-7368, United States v. Reed. Counsel, we're happy to hear from you. Good morning, and may it please the Court. My name is Maya Eckstein with Hunton Andrews Kurth, representing Larry Reed Pro Bono. Your Honors, there are two independent reasons under which this Court may vacate the District Court's denial of Mr. Reed's first step-back motion. Number one, Mr. Reed's sentence exceeds the statutory maximum made retroactive by the First Step Act, and thus, under this Court's decision in Collington, was an abuse of discretion. And number two, even if that holding in Collington was no longer good law, and we believe that it is, the ruling was not substantively and procedurally reasonable. I'd like to address each of these in turn. First, Mr. Reed's sentence exceeds the statutory maximum set forth by the Fair Sentencing Act. This Court made clear in Collington that the First Step Act makes the Fair Sentencing Act's reduced statutory minimums and maximums retroactive. Can you pause one second for me? Madam Clerk, we don't have a clock running. I'm sorry. Which I'd be happy to give you all the time you need, but at some point we want to know how long we've given you. I'm sorry. Thank you very much. Sorry. Please go ahead. Ma'am, assume, and I don't believe Collington was abrogated for obvious reasons, but assume that it was toned down by conception. Just how much explanation must the District Court provide for its decision? In terms of the explanation that must be provided for its decision, this Court, I believe in United States v. Martin, explained what that standard is, helped by the Chavez-Mesa case of the United States Supreme Court. In Martin, that was a case involving two consolidated cases for appeal with 3582C2 motions for sentence modifications. So much more constrained analysis on the motion for a sentence reduction than is available here under 3582C1B in the First Step Act. And in that case, what the Court held was, well, in that case, Ms. Martin specifically, she had had a lengthy prison sentence and a lengthy, I think this Court referred to it as a mountain of evidence of post-sentencing rehabilitation. And the District Court simply said, I analyzed the 3553A factors, and I think that her offense conduct outweighs everything else. This Court held that based on the complexity of that case, the length of her incarceration, and the mountain of evidence that she had submitted, more was required. More of an individualized explanation was required. That is similar to exactly the same thing that happened here with Mr. Reed, but of course under the 3582C1B standard, not 3582C2. Here, the District Court, I think it said about three or four words about the, again, mountain of post-sentencing rehabilitation evidence that he had submitted to the District Court. He submitted evidence, I think he took virtually every program available, completed every program available in the prison system. He's been incarcerated for 25 years since 1997. Can I turn you back for a second to what I think was the first argument you were making about the statutory maximum? And when I look at the First Act Amendment Application Worksheet, and I'm at 257 in the JA, the probation officer continued to treat Count 1 as a tend-to-life offense. We've been talking about it in the briefs. It seems to talk about it as if it's a 5-40 offense, but the probation officer calculated it as tend-to-life. And so when the District Court imposed the sentence on Count 1, it wouldn't have been above the statutory maximum, at least as described here. And I haven't seen that argument been made by you or your client. And so it seems a little odd for us to fault the District Court for relying on the tend-to-life sentence that's identified here in a scenario where nobody's argued that that calculation was incorrect. Start there, I've got a couple follow-ups, but do you understand what I'm getting at? So Collington, to the extent Collington, this part of Collington, survives Concepcion, and we can talk about that. But at least under Collington itself, you must reduce the sentence to the statutory maximum. But here, Count 1 is identified as a statutory maximum of a life. So two things. Below, and I believe on appeal, and I apologize if we made a mistake on that, but on appeal and below, the argument for Count 1 was actually zero to 20 years is the new statutory maximum. Mr. Reid made that argument below, because the jury was not asked to make a specific finding on drug weight. And so below and on appeal, the argument is that zero to 20 is actually the maximum. As to Counts 8 and 9... All right, but assume I reject that argument, and instead I look at Count 1 as it was charged, right, which was the 28 grams, right, which then means that it's a 5 to 40 offense. Yes. I understand the argument, but bracket that for a minute, because maybe that one's not as compelling as this one. But still, we've got a scenario where it strikes me that it's either 5 to 40 or 10 to life. Probation identifies it as 10 to life, and the district court imposes a sentence of life, or it doesn't impose any sentence, chooses not to exercise its discretion. The district court actually agreed with Mr. Reid that the sentence on Count 1 should not be a life sentence, but it was actually, I believe the district court decided it was a 5 to 40 year, and that's at JA 144 of his opinion, of the district court's opinion. So it recognized, all right, so then help me understand why that's right, given your client's distribution of cocaine offense from 92? I'm just trying to understand the framework. I know we've got lots of legal issues, but if I'm looking at JA 223, he's got a prior cocaine distribution offense that he got a 10-year sentence on, and so why wouldn't that be a qualifying prior drug offense, which would obviously change the 5 to 40 to 10 to life? So I sort of thought that maybe he got that wrong, that it actually is a 10 to life offense. Am I missing something there? Yes, so the jury did not make a finding as to drug type or quantity involving Count 1. The court attributed the 2.7 kilograms to Mr. Reed, not the jury. So that decision was not made. But if that argument's right, it's not 5 to 40, it's 0 to 20. So if we accept the district court's finding that it's 5 to 40, he's rejected your argument that there's no drug rates at issue. And he's still applying, as I think Concepcion tells us, only the changes that happen as a result of the First Step Act. That's the language of Concepcion. And so that change would be if it was a no prior offense, B1B offense, then it's 5 to 40. But if there's a one prior offense, i.e. a distribution of cocaine, the B1B offense goes from 5 to 40 to 10 to life. Your Honor, I'll admit that issue was not raised before, and I would have to look into it to address it further. Okay. All right. We'll hear Mr. Cook's views. Okay. Well, and I will say that Mr. Cook advised me before the argument started, and he can tell you that he believes that we preserve the statutory maximum argument. You did. You preserved the argument that you were making, which is they failed to raise or present to the jury the drug rates. Right? That argument you preserved. I get that, but that gets you to 0 to 20. That doesn't get you to 5 to 40, because 5 to 40 requires a drug rate finding. It requires more than 28 grams of crack. And so once you get to 5 to 40, that argument has been rejected. There's a second argument about if we're in B1B, not B1C land, what is the appropriate statutory maximum? And I'm not trying to catch you off guard. This isn't a quiz. I just wanted to know if you had a view on it. And I apologize. Like I said, it wasn't raised below, and I haven't looked into that. But I can be happy to. All right. So then I totally get that. That was sort of my concern, because it wasn't raised below. Help me understand the argument that you began with, then, that is you're required to reduce – a district court is required under the First Step Act to reduce the sentence to the statutory maximum. But when I look at 257 of the JA, the statutory maximum identified was 10 to life. The district court reduced that to 5 to 40. But that doesn't account for the two 924C offenses, which both have statutory maximums of life. Well, and I would disagree with that, Your Honor. With respect to the 924C offenses, the life sentence would apply if Mr. Reed was deemed a career offender under 4B1.1. He was not. No, no, not a guideline life sentence, but a statutory maximum. So 924C, the statutory maximum for 924C, not the statutory minimum, but the maximum for 924C is life. These were Mr. Reed's first 924C convictions. Totally fair. And under the statute, he was – and the stacking that applied at that time, he was given sentences of five years and an additional 20 years consecutive. I believe that was the max that he was eligible for at that time. Okay. Assume hypothetically that that's just not what the law is. Both the Fourth Circuit and the Supreme Court have both said that there's no statutory maximum for a 924C. Just accept that as a hypothetical. Then in that scenario, wouldn't we then have the same situation where now the statutory maximum available to the judge was, you know, two life sentences plus 300 years, right? We treat counts together. And so the court there, you know, given the three 5-40 offenses and the nine 0-20 offenses, the court could have, if the First Step Act was applicable, imposed two life sentences plus 300 years. I'm not saying the court should have done that, right? That's a judgment. But that would have been within the court's statutory authority. If the precedent for that is what you're saying. No, it's a hypothetical. Yes. Certainly the district court would have had the discretion to do that, but the district court needs to have taken into account the 3553A factors, including sentencing disparities. Totally fair. I get that. But that's a separate argument, right? So that's the argument that he didn't adequately explain or consider his discretion. It's not the argument under Collington that the district court has no discretion where the sentence was above the maximum available. And here the maximum available pre-First Step Act was really long, but sort of under the First Step Act, the statutory maximum that was available was two life sentences plus 300 years. I hear you. I'm not sure we agree that that was the maximum available. Except in my hypothetical that 924C has no statutory maximum. Right. Okay. And then we're back to, I think, Judge Floyd's question, which is, is the explanation good enough? Right. So with respect to Collington and Concepcion, we do believe that Collington's holding remains good law. Collington largely addressed two issues, the retroactive effect of the Fair Sentencing Act reduced statutory ranges, particularly the statutory maximum on the First Step Act. And number two, whether district court must consider certain intervening changes in the law or fact when determining the proper sentence. So counsel on that, I kind of anticipate and to an extent understand that the precise issue in Concepcion was not a statutory maximum. That's not what they were talking about. But doesn't the language in the opinion, if not specifically abrogating the Collington holding, particularly the language that says, 404C only underscores that a district court is not required to modify sentence for any reason. I mean, yeah, the facts may not be the exact same, but how does that not just tell us what the rest of the opinion seems to imply that, yeah, you must consider these things, but you don't have to. I understand your honor. So that statement by Justice Sotomayor has to be taken into context of what the question they were addressing was. And Justice Sotomayor states in her opinion, she specifies what the question is. And she states, the question is whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law, such as the sentencing guidelines or changes of facts such as behavior in prison in adjudicating a First Step Act motion. So Concepcion addressed other intervening changes of law, not the intervening changes of law that are actually set forth in the First Step Act itself. I mean, I'm not really disagreeing with that. I think that is fair. But the court moves really at almost every turn, you know, talking about the discretion the district court has. And while that's maybe the precise issue, it's just kind of hard for me to look at and read this opinion and not saying you must consider them, but you don't have to apply them. And that language I cite is not constrained in any way, is it? We believe the analysis would be different if the court had looked at the language of the First Step Act itself and determined whether it was intervening changes in the law. This court has recognized and Concepcion recognized that the very purpose of the First Step Act is to apply the Fair Sentencing Act's reduced statutory ranges. This court has repeatedly emphasized that Section 404 gives retroactive effect to the new statutory maximums, did that in Collington but also in Worsing and Woodson. And if you couple that purpose with the reasoning of this court, also recognized by Concepcion, that resentencing under the First Step Act is a fulsome enterprise, not a plenary resentencing, but certainly far more than under 3582 CT. And the conclusion, that analysis is likely to be very different. And I would also remind the court, the court does not need reminded of this, but of course an opinion of a previous panel of this court is binding on subsequent panels. So hopefully that answers the question. Unless the premise is undermined by the Supreme Court, right? I mean, that's the question that we're trying to get at. We all agree that if Concepcion doesn't exist, that Collington is wholly binding. But the question is, you know, whether the statements that the First Step Act does not compel, you know, the district court to reduce for anything, right? I mean, it seems like to me that language is hard to get around. The DDC and the White decision, the district court, they are recognized in looking at our prior decision in Collington, that Concepcion overruled that concept of the requirement that you reduce to the statutory maximum. Has any court suggested that Concepcion does not overrule that part of Collington? Not all of Collington. I'm not suggesting that. But the narrow piece of Collington that the district court must reduce a sentence to the statutory maximum? The only case law that we have found that squarely addresses Collington's holding about the statutory maximums and the effect of Concepcion is the White case. So we're not aware of any other case. Assume Judge Richardson is right about you don't have to reduce a sentence. That would not change the outcome of whether or not the judge gave any kind of explanation for why he didn't consider in particular the rehabilitation, would it? No, that's absolutely correct, Judge Floyd. We believe that the sentence was not, sorry, the decision was not subjectively procedurally reasonable because the district court did not give adequate consideration to the 3553A factors and really relied solely on the original offense conduct. Is your argument concerning substantive and procedural unreasonableness? I just want to make sure I understand the aspects of it, not get the argument that it was not adequately explained. Do you have any other arguments about substantive or procedural unreasonableness besides that? Well, yes. So a couple of things. The district court did not consider Mr. Reed's non-frivolous arguments about 924C. Now, it did acknowledge that it could consider those arguments, but once it decided to retain the life sentence, it didn't then address it further. In the disposition part, there was no discussion of it. So that's not just inadequate. You say 924C wasn't, other than mentioned earlier, wasn't explained at all? Correct. So the rehab and the 924C explanations, those are the two issues? The rehab, the 924C issue, and then the substance of the explanation itself undermined the extent of that explanation because of the complexity of the case. And I believe my time is up. Thank you so much, counsel. We'll hear from you a little bit on reply. Mr. Cook, we're happy to hear from you. Can you start by explaining to me what the statutory maximum actually is under count one? When I look at J144, I don't see the court as making a ruling about what the statutory maximum is. That's addressing the argument that we ought to use the 2.7 kilos instead of the indictment provision. Can you help me sort through that? So let me give you initially a little bit of history. So initially the Department of Justice's position was that whether something was a covered offense or not, and this is 404A we're talking about, would require a court to look at drug quantity. And since the drug quantity in this case ultimately far exceeds the new 280 grams, the position was that it's not a covered offense. We now know in light of the Supreme Court's opinion and Terry that what you look to is the statute at issue in deciding whether there's a covered offense or not, and a B1A, wait, 846 conspiracy would be a covered offense. So that's answered. Now what that doesn't do is it doesn't tell you the answer to what happens next when you have a covered offense. And the ruling from Collington is that you would necessarily have to lower the penalty range, and it's not entirely clear what Collington meant by that in a context where the drug quantity far exceeds the maximum, whether you just never take that into account. And that would be inconsistent with what you would do, say, with an omitted element on direct appeal. You would look at whether there was overwhelming. I would have presumed that we would look under Collington, and maybe this is a presumption, which is always dangerous, but I would presume we would look to the indictment to see what would then be treated as a first step. So if this was a 28-gram case, because that was what he was indicted for, the sentence under the First Step Act for that would move him, sentencing-wise, not conviction, but sentencing-wise, to the B1B range. There is unquestionably a lot of lower court opinions that refer to looking to the indictment. I actually think that's not the correct way to do the analysis for either 404A or B and C. And the reason for that is pretty simple. I think that if, for whatever reason, and there are districts that would routinely charge the actual amount in the indictment, even pre-apprendi, that practice would not render those offenses not covered offenses. So let's suppose the indictment said, you know, it just happened to say that back, you know, in 1998. That wouldn't render that offense not a covered offense. It would be relevant if you were on direct appeal and you said there was an error about how you had determined the triggering drug quantity. Totally fair, but that would be the question of whether it's a covered offense, right? Because the covered offense is only, is this a B1A offense? Right. Period. And so if you're under B1A, it doesn't matter what the number is for A. That doesn't necessarily translate for B or C. Right. And here's how I think the analysis works now in light of the combination, really, of Terry and Concepcion. First you have the statutory focused inquiry about whether there's a covered offense. Then you ask, am I going to reduce the sentence? And we know that the structure, the reasoning of Concepcion, I think, is inconsistent with Terry. And let me explain that. So Concepcion says analytically what we're going to do here is the language of 404 controls. And then there aren't these limitations otherwise that exist that are not in the statute. And we'll look to background principles of sentencing law to fill in. And when you do that, there's nothing that can overcome 404C's very clear language. And I would say there were some things about 404 that, you know, are sort of hard to figure out. But 404C is not hard to figure out. I mean, it says nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section. And there is nothing in Concepcion that leaves you with the tools to say that that doesn't mean what it says. Furthermore, you have now this growing body of precedent that recognizes that 404 is purely a sentence reduction statute. It doesn't change the classification of an offense. And so since it's not changing the classification of the offense, it's incorrect to say that the statutory penalty range has, in fact, been knocked down. It's just saying, look, in the exercise of your discretion, you can reduce the sentence and you should take into account how the Fair Sentencing Act would apply. But it is not saying that your criminal liability has changed. It is not saying that the statutory maximum has, in fact, changed. And that explains why 404C makes sense. It says nothing in this section shall be construed to require a court to reduce any sentence. And that makes sense because it's a discretionary sentence reduction. So help me understand how that theory would apply. So in that scenario, as Concepcion and others tell us, we have to figure out what the new guideline range is. Right. And in doing that, you know, part of the guideline calculation includes what the statutory maximums are, right, because that informs both in the career offender context, but also in the drug context what the actual guideline sentence is, right? It sort of caps it or raises the floor depending on whether it's a maximum or minimum. So you're required to calculate what the new statutory maximums are in order to do the revised guideline calculation. Thayer, are you with me so far? I am with the qualification. And I would point the court to page 2402 of the Supreme Court's opinion. And it says, and I'll read the passage, thus the language Congress enacted in the First Step Act specifically requires district courts to apply the legal changes in the Fair Sentencing Act when calculating the guidelines if they choose to modify a sentence. And so I think that last language, if they choose to modify a sentence, means something. And what it means is if you're choosing not to modify the sentence, then. . . You don't need to calculate the guidelines at all. Yeah. I mean, now if a defendant rolls in, there's other parts to Concepcion that says, if the defendant says, I've got to cover defense and there were errors and I'd like you to consider them, the judge has to address those arguments and take them into account. But if the judge is like what happens here. . . I understand that argument. I think that's helpful. But bracket that, assume the district court does recalculate the guidelines or is going to reduce. In order to do that, he has to figure out what the statutory maximums are because that determines in some instances what the guidelines are. Right. Not necessarily in this case, but in some. Yeah, a career offender case, the statutory maximums that would apply would directly affect. . . Directly affect what the guidelines are. In other contexts, where there's a max, the guidelines become whatever the max is. But in that scenario, what would they then look to, to determine when you've got an indictment that was 28 grams of crack, would they in that instance look to the indictment to determine what the statutory maximum is? Do you see what I'm saying? Sure. In this scenario, we've narrowed it down to a smaller spot. But in that scenario, would you have them look to the indictment or would you have them look somewhere else to determine what the statutory maximum would have been under the First Step Act? It seems like to me that's got to be the indictment. I don't think I would agree because, for example, you could have a case that is indicted pre-apprendi where the drug quantity was not mentioned in the indictment and the lack of a drug quantity, I do not think, would zero you out to a 20-year max. I think a district judge would have discretion to say, look, there was— Oh, tons of discretion, right? Right. Except we've got discretion. But assuming we've got to do the guidelines, so in the pre-apprendi, like old, old world, if we go far enough back, they include no drug weight. What would you have the district court look to to identify the statutory maximum, if not the indictment? I think that the evidence in the case would be— so there are going to be cases that were— So here, the 2.7, you'd say— Right. We've got to figure the— Right. I think that's right. I mean, there are going to be cases where there was a defendant stopped in the midst of a drug sale and the drug sale was 57 grams of crack. And you can look at that case and you can say, there's no question that applying the Fair Sentencing Act, it would not be a 280-gram case. But there's nothing— let me put this more broadly and practically. There's nothing in the language of 404a, b, or c that compels a court to grant windfalls where you can look back at the case and say, this was a massive 12-year conspiracy. Didn't the court sort of get away with that, get away from that idea when we applied and the Supreme Court applied, you know, apprendi to drug rates? I mean, what the court said there is, well, you look back to the indictment, right? There's still, in light of cases like Cotton, clearly a harmlessness inquiry. And Greer is another illustration of that, such that even when you're talking about omitted elements of the offense, you can say that the omission is harmless. And what's more is that whole body of law, it stands apart from the First Step Act as well. And so I think it's a fair— and really I would read the district court opinion in white from the District of Columbia to be saying this— is that these apprendi rules are in a class with the ones that the judge may consider, but doesn't have to, such that, you know, Concepcion says, look, when you go to exercise your discretion under 404B, you can consider these other arguments, and apprendi-type arguments would be one of them. But you are not compelled to take a, you know, here a 2.7-kilogram case and say really we'll treat it like it is not even 208 grams. And, you know, the easiest way to see that is just to follow the structure of 404, which is first you ask is it a covered offense. That's answered not by facts, but by looking at the statute at issue and whether the defendant's got a, you know, a B1A, for example, conviction. Here B1A via 846. Yes, it's a covered offense. You don't need to know more. And then the rest of the statute says exercise your discretion and address the defendant's arguments. And it is—nothing requires you to reduce any sentence. And the defendant is free to make arguments that would say, you know, really the drug quantity is such that I should get a reduction. Or never mind the drug quantity. I just want to make sure I understand this because it strikes me— I mean, what Conception tells us is that you must, at least if you're going to reduce the sentence, I understand that argument, but bracket that for a minute, that you must recalibrate the guidelines to reflect the Fair Sentencing Act's retroactive application. And the question is application to what? And I think we would all say that if you indicted somebody today and said that they had 28 grams of crack, they would fall in the sentencing range of B1B. Right? I mean, that's the—and so if the Fair Sentencing Act applied to the facts, to the retroactive application of the facts then, then it would—the indictment would determine the statutory maximum, not the actual drug weight, right? I mean, that's why we would do that today. If you had a case that said 28 grams in the indictment and then you prove at trial that it's, you know, 2.7 kilos, you give the jury the question, is it 2.7 kilos? They find it's 2.7 kilos. The judge finds it's 2.7 kilos. But the indictment says 28 grams. We're B1B. We're not B1A. Right? I mean— No, I would resist that. Let's take a case that's charged today. So no question the change from the Fair Sentencing Act applies. The indictment, there's a mistake. It says— Left a zero off. Yeah, left a zero off. It says 28 grams. All the evidence at trial is this was multi-kilo transactions with the Colombians. And then on appeal, the defendant says, look, you had to treat this as a 5 to 40 case because look at the indictment. That could be subject to harmlessness. Cases like Cotton and Greer, I think, established that. Totally fair, right? I totally get the harmless argument, right? Yeah. But what we're told is that we're to recalibrate the guidelines to reflect the Fair Sentencing Act's retroactive application, not the, like, meaningful application, right? It just means do it right. Right? That doesn't seem hard, right? Like, not do it in a manner that's like would survive plain error review, but do it right. Like, take the Fair Sentencing Act, take the facts of our case, which includes the indictment, and apply the Fair Sentencing Act's description to our facts, which is indictment of 28, proof of 2.7, and say, all right, that's the calculation. Now, then the district judge says, okay, well, I think that's not right, and I don't care about that because this guy's really terrible or this guy's really great, and he applies his discretion. But I guess I'm having a hard time getting past the, to figure that out, if we're doing the guidelines, that we don't look to the indictment to determine the statutory maximum. Right. Well, and it may be that, I mean, I don't agree with that, but the distinction may be one that doesn't make much difference. If you agree that ultimately the judge doesn't have to reduce any sentence, then whether you look to the indictment or not becomes not terribly significant because the judge would then be looking to. That's consequences. I don't care about the consequences of what we do. I'm trying to figure out the right way to do it. And it's hard for me to see that I look to the actual conduct in this case when there's no scenario where I look to the actual conduct in these statutory maximum cases today or really since appending. Well, but I would say there's literally nothing in any subsection of 404 that says look to the indictment. And if you establish this. No, it says apply. And then the court says you must, again, whether the reduction clause you talk about and the concept you own applies. But it does talk about the requirement, I think, to recalculate the guidelines. When you look at the footnote that follows that language, that makes it more clear. It may be debatable given the language you mentioned. And so it seems to me you have part of it suggesting a recalculation even if that doesn't require the application of a new statutory max. That's a separate question. But a first step seems, no pun intended, a first step seems to be let's recalculate them as if and then decide what to do. Right. Well, and I don't want to belabor this point because I think that from a government's perspective what matters here is that you not end up with windfalls that, you know, in a case like this that's got huge drug quantity over 12 years, two murders that the defendant's held accountable for, that there isn't just some sort of automatic reduction in sentence. And so as an administrative matter, you have to say that the statutory maximum, if you... Well, the windfall to some extent is of your own making, right? I mean, you indict how you indict. And I get the strategies and all that. But to the extent there's a windfall, the government has some role in that, doesn't it? Well, I mean, that would be to say that the government should have in the 90s anticipated that Congress would pick 280 grams. Yeah, that's fair. And there's no way to know that. And indeed, that might change again. So, but I hear you. I mean, I don't want to in any sense belittle, because I shouldn't and couldn't, the importance of the grand jury process and getting an indictment returned. It's that we are asking that inquiry here in the context of a discretionary sentence reduction. And I think that what happened in the indictment process is really kind of a lot less material than a lot of other facts about what the appropriate way to handle a sentence reduction is here. Like what matters from the sentence reduction standpoint is the gravity of the conduct and how you're going to treat different defendants. Can you turn just for a second and talk a little bit about the sort of alternative argument that, all right, full discretion, you can do what you want to do, but we've got to have more about rehab, 924C, and the sort of explanation for why that discretion is exercised? Right. Let me start with what I take to be kind of the more complex question, which is the 924C. And on that point, the district court adopted the view that it had the ability to lower those sentences. I don't think that's actually accurate for the following reason. So there's two 924Cs, and the then-applicable mandatory minimums apply. Under this Court's opinion in gravat, you don't get to revisit mandatory minimums that are unrelated to the Fair Sentencing Act, and these are unrelated to the Fair Sentencing Act. Now, the question becomes, and this is, you know, in fairness to the defendant, the defendant's point is, sure, but Congress eliminated the stacking penalties, and so you should apply that now. But the reason why that doesn't work is, in a nutshell, this Court's opinion in Jordan, which is, Jordan says, look, was a sentence imposed for that? And yes, it was. And so the 403 change to the 924C penalties has no application, and so the district judge really was obliged to leave those 924C sentences unchanged. Now, I don't think this Court ultimately has to get to that question because this district judge thought he could do it and was like, no, I'm not doing it, and the reason is, I think, fairly understood from the opinion, which is, there was a lot of drugs, this was a long conspiracy, and you committed two murders. And so that's a fair reason to be like, I'm not going to change the sentence. And what's more is, as to the 924Cs, even collectively, the sentence falls within one 924C's penalty range. So he was certainly within his rights as a discretionary matter. I'm sorry. I mean, I hear you. I think that you could read the whole opinion and certainly say that's what the district court was talking about with respect to 924C. And if we were, you know, maybe talking with a clean slate, that might be the case. But, you know, given our precedent, do you really think the 924C discussion predisposition, you know, is enough to meet what we've talked about in other cases? I do. I mean, look, the Supreme Court, obviously this Court has expected a fair amount in the way of explanations. It is also the case that in Concepcion itself, the Supreme Court reaffirmed its view that a brief statement of reason suffices and that a court is not required to expressly rebut each argument. And in context in this case, I think it is important to remember there was not a dispute about the guidelines in the district court, other than this what's the applicable statutory maximum on the counts. And the essence of it was the defendant said, I've done a bunch of things in prison, take courses, been on the suicide watch program. And on the other side of the scale was a defendant who participated in a leadership-type role in a very long-running conspiracy and committed two murders. Yeah, I mean, that's kind of getting to the wasn't justified. You're talking about a little bit slightly different question, at least, as to whether, at least in the 924 context, that was. Right. My point is just I don't think at the end of the day this was terribly complicated. You know, the judge was looking at it and was saying to himself, you are a very dangerous offender. You committed grievously bad crimes. And the defendant is saying, but I did some stuff in prison that is good. And he said yes, and he enumerated those. But that just doesn't outweigh the fact that you had this gravity of crime. And I do think that that informed the judge's view and explained what he was doing with the 924Cs. Now, if his reasoning had been something closer to what the government is saying here is the right answer, that sorry, I can't apply, you know, 403s changes to the 924C penalties, I would expect to see more, you know, because he didn't have that reasoning, and that wasn't his reasoning. So I'm offering that as an alternative basis to affirm is that, sorry, you actually didn't have the discretion you thought you did. Well, you know, we've had academic argument about 403, but isn't it just as simple that he was sentenced, actually sentenced, before the enactment of Section 403? Yes. And if he committed a crime and 403 was passed, then he would get the benefit. Yes, that's right. So in this case, psychohelic. Yeah, I agree with that. It's really not that complicated. Can I ask just one final question? Sure. If you accept that you look to the Fair Sentencing Act and the indictment to determine the statutory maximum, then was it an error, if that's right, I understand, was it an error when the probation officer said count one was a 10-to-life offense? No, and Your Honor is right. Paragraph 128 shows the defendant had a prior felony drug offense, and so that would have triggered, even on the assumption that it was a 28-gram case, would have triggered the 10-to-life range. Now, having said that. That might be right, but nobody made that argument. That is true. And in the original PSR, they didn't rely on that distribution offense. I'm not sure what, probably because it wasn't all that important, given the length of sentence he was otherwise going to get. But wouldn't that also then mean that counts eight and nine, which are also 28-gram offenses, should have been 10-to-life, and they figured those as being 5-to-40? I mean, there just seems to be some inconsistency. Right. Eight, nine, and one, they have to be the same. Your Honor is right. And in fairness, nobody paid any attention to this point because it didn't matter. Everyone said, look, by drug quantity alone, these offenses have the penalty range that they do. And so it wasn't necessary to do an analysis about the prior felony drug offense. But it's there, and that is going to trigger the penalty range. I mean, similarly, if this Court were to say that you had to lower the statutory maximums under the Fair Sentencing Act, then the guidelines would say, because the guideline range is life, that you would have to stack counts. And this Court's en banc opinion and angle not long after Apprendi was an illustration of that, and I've cited that in a supplemental brief, as well as a recent unpublished case that I cited, Hines and Allen and Chase, is that you would have had to stack. Now, having said that, in this case, the judgment of conviction and the way the sentences are configured doesn't reflect that that's what happened. So you'd either have to say that the failure to do that is hard. But the point is that you could, in this instance, impose two life sentences plus 300 years based on stacking. Right. And that's the same effective sentence that was imposed before. Correct. Are there other questions? Thank you, Mr. Cook. Counsel, we're happy to hear from you. Thank you, Your Honor. Just a couple of points. There are a couple of ways that we believe that this Court can decide to vacate and remand here. Possibly the cleanest way to do that, based on the discussion that we've had here today, is really on the basis of substantive and procedural reasonableness. I would like to add, to make sure the Court is aware, that in his 25 years in prison, Mr. Reed has been employed by the prison system throughout that 25 years. He has received only two infractions in that time period, the last almost 20 years ago in 2003. As explained in Martin, this is a far more complex case than the District Court made it out to be. It required a… What would you require a District Court to do after concepcion? Concepcion seems to say that, you know, a brief statement is all required. You don't have to rebut every argument that's made. And here, the District Court acknowledges the rehab, right, and gives a brief statement, right? Under some of our prior precedent, I totally understand the argument. Let me understand after concepcion, like, how that doesn't mean that this is enough. Even concepcion doesn't disregard the idea that complex cases require maybe a little bit more, something a little bit more. Right, but what's… Okay, so then… All right, and so why is this case complex, right? I mean, he commits two murders. He's got drug rape that's over the life requirement. He's engaged in, like, not just actual violence, but he's carrying guns around. I mean, this doesn't strike me as the most complex case. Add to that a couple of things, Your Honor. Add to that 25 years of imprisonment. Add the fact that all of his… I believe that all of his co-defendants have already been released on First Step Act relief, for the most part, is my understanding. The sentencing disparity issue. Add his conduct in prison over those 25 years and the amount of post-sentencing rehabilitation evidence that he has presented. In addition, with respect to the drug way, I think that the answer is that you do… You look to the indictment, but you also have to look to see what the jury found. The jury here did not find 2.7 kilograms of crack. The indictment was the indictment, but the jury was not asked to make a specific jury finding. And you cannot, as this Court knows, you cannot increase the statutory maximum based on findings that are not made beyond a reasonable doubt. So, with respect to that issue, you know, because of those holdings, we don't think that he was… And as a result, Your Honor, we would ask that you vacate and remand Mr. Reed Sutton. Thank you, Counsel. As you probably well know, we have a tradition that we very much enjoy of coming down and greeting counsel. We have not yet restarted that condition, given where we are, but we certainly thank you both for your arguments and we look forward to having you back where we can greet you in person.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Henry F. Floyd